FILED

APR 0 8 2020

TIMOTHY M. O'BRIEN CLERK
By_____CA_____Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Henrik S. Opheim  )
  )
_____  )
  )
_____  )
(Enter above the full name of the Plaintiff(s)  )
  )
vs.  )  Case Number 20-CV-2185-EFM-JPO
  )
Via Christi Ascension -see attached sheet  )
Name  )
1823 College Ave  )
Street and number  )
Manhattan, KS  66502  )
City     State     ZipCode  )

(Enter above the full name and address of the
Defendant in this action - list the name and
address of any additional defendants on the back
side of this sheet).

## CIVIL COMPLAINT

I.  Parties to this civil action:

(In item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any, on the back side of this sheet).

A.  Name of plaintiff Henrik S. Opheim

  Address 732 Ridgewood Drive, Manhattan, KS 66502

1

(In item B below, write the full name of the defendant in the first blank. In the second blank, write the official position of the defendant. Use item C for the names and positions of any additional defendants).

B.   Defendant Via Christi Ascension                                          is

employed at _____

_____

C.   Additional Defendants See attached sheet.

_____

_____

II.   Jurisdiction:

(Complete one or more of the following subparagraphs, A., B.1, B.2., or B.3., whichever is applicable.)

A.   (If Applicable) Diversity of citizenship and amount:
1.   Plaintiff is a citizen of the State of _____ .
2.   The first-named defendant above is either
     a.   a citizen of the State of _____; or
     b.   a corporation incorporated under the laws of the State of _____ and having its principal place of business in a State other than the State of which plaintiff is a citizen.

3. The second-named defendant above is either
     a.   a citizen of the State of _____; or
     b.   a corporation incorporated under the laws of the State of _____ and having its principal place of business in a State other than the State of which plaintiff is a citizen.

(If there are more than two defendants, set forth the foregoing information for each additional defendant on a separate page and attach it to this complaint.)
Plaintiff states that the matter in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars ($75,000.00).

B.  (If applicable)  Jurisdiction founded on grounds other than diversity (Check any of the following which apply to this case).

☑ 1.   This case arises under the following section of the Constitution of the United States or statute of the United States (28 U.S.C. §1331):
Constitution, Article____, Section____;
Statute, US Code, Title____, Section____.

☑ 2.   This case arises because of violation of the civil or equal rights, privileges, or immunities accorded to citizens of, or persons within the jurisdiction of, the United States (28 U.S.C. §1343).

☐ 3.   Other grounds (specify and state any statute which gives rise to such grounds):

_____

_____

_____

III.   Statement of Claim:

(State here a short and plain statement of the claim showing that plaintiff is entitled to relief.  State what each defendant did that violated the right(s) of the plaintiff, including dates and places of such conduct by the defendant(s).  Do not set forth legal arguments.  If you intend to allege more than one claim, number and set forth each claim in a separate paragraph.  Attach an additional sheet, if necessary, to set forth a short and plain statement of the claim[s].)

See attached sheet.
_____

_____

_____

_____

IV.   Relief:

(State briefly exactly what judgement or relief you want from the Court.  Do not make legal arguments.)

3

To be determined upon further research.

V.  Do you claim the wrongs alleged in your complaint are continuing to occur at the present time? Yes [X]  No [ ]

VI.  Do you claim actual damages for the acts alleged in your complaint? Yes [X]  No [ ]

VII.  Do you claim punitive monetary damages? Yes [X]  No [ ]

If you answered yes, state the amounts claimed and the reasons you claim you are entitled to recover money damages.

To be determined upon further research.

4

VIII. Administrative Procedures:

A. Have the claims which you make in this civil action been presented through any type of Administrative Procedure within any government agency?
Yes ☐   No ☐

B. If you answered yes, give the date your claims were presented, how they were presented, and the result of that procedure:

_____

_____

_____

C. If you answered no, give the reasons, if any, why the claims made in this action have not been presented through Administrative Procedures:

_____

_____

_____

IX. Related Litigation:

Please mark the statement that pertains to this case:

☐   This cause, or a substantially equivalent complaint, was previously filed in this court as case number _____ and assigned to the Honorable Judge _____.

☑   Neither this cause, nor a substantially equivalent complaint, previously has been filed in this court, and therefore this case may be opened as an original proceeding.

                                                s/ Henrik S. Opheim
                                                Signature of Plaintiff

                                                Henrik S. Opheim
                                                Name (Print or Type)

                                                732 Ridgewood Drive
                                                Address

```
                    Manhattan, KS 66502
                    City      State      Zip Code

                    (785) 477-1724
                    Telephone Number
```

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates { ☐ Wichita, ☒ Kansas City, or ☐ Topeka} , Kansas as the
(Select One)
location for the trial in this matter.

s/ Henrik S. Opheim
Signature of Plaintiff

## REQUEST FOR TRIAL BY JURY

Plaintiff requests trial by jury { ☒ Yes or ☐ No }
(Select One)

s/ Henrik S. Opheim
Signature of Plaintiff

Dated: 04/08/2020
(Rev. 10/15)

6

Mother went to Via Christi hospital on April 4 2018 for a simple case of pneumonia. She responded well to treatment and I was told not to worry and on Friday I was told she would be released the next day. On Saturday I was suddenly told she was on end of life care. I protested and contacted my attorney. I had been by her side most of her hospital stay and spent Saturday night holding her hand and talking to her. She was in good spirits, talking and blood oxygen was good, and so was her breathing and heart rate. Then she was given some kind of drug. At first she was obviously euphoric, expansive, and this was unlike her. She never drank and avoided medications all her life. Then she slipped into an extremely ominous sleep. I could not wake her. Her breathing became extremely loud. I asked about this, the nurses said they had been told by the guardian not to give me any information about her medical condition. They deceived me and said it was normal sleep. I only found out later that the loud breathing is the result of a morphine and ativan mix that is often given basically to end a person's life. Morphine is one of the worst things to give to people with lung trouble because it depresses breathing and this causes fluids to build up in the lungs which causes the very loud breathing. Originally benzodiazapenes were considered safe because they did not depress breathing. This went on all night. I was repeatedly told this was normal sleep and was healthy. At 7:30 I was exhausted and I went home to sleep. At 7:43 I was given a call that she had taken her last breath. The nurse was very rude and domineering. I pleaded desperately for them to revive her, they refused. When I arrived I began performing CPR on my mother but the nurses made me stop. I lost my temper. I'm absolutely sure that she died from a drug overdose. She was quite healthy the night before. The times listed on the nurses notes are incorrect. I believe she died unnecessarily because of a drug overdose.

Mother went to the Via Christi hospital ER on April 4 2018 shortly before 3:00 PM. Casey Poell, MD said the caretaker spoke for her because she was unable to answer questions and was only speaking in Spanish (her native language). The caretaker reported upper respitory symptoms for the past few days and told the doctor my mother had "possible pneumonia". The doctor found at that time that my mother was "quite severely malnourished."

A chest film obtained at 3:48 PM on 4/4/2018 showed mother's "left lung is clear" according to Michael Sheffield, MD. At 9:20 AM 4/5/2018 Greg Welle MD found "New hazy opacity in the lower left lung potentially representing pneumonia". At 2:22 PM 4/5/2018 Greg Welle MD then found "Hazy opacities in the left base may represent pneumonia". At 2:30 PM 4/7/2018 Michael Sheffield, MD wrote "There is alveolar consolidation in each lung" and said "A superimposed alveolar pneumonia would be difficult to exclude". Is this when they finally diagnosed my mother with pneumonia?? Three days is too long for three different doctors to decide on a diagnosis for one elderly patient in a serious medical crisis.

My mother had two PICC lines placed -one near her jugular vein and one in her right arm. Her medical chart shows they were removed but gives no explanation who authorized their removal or why. Then on April 7 house supervisor A. Lehman placed a peripheral IV in her right foot (page 369). I discovered on the internet that "It is highly unusual to start an IV in the patient's foot and should be avoided due to a high infection rate, potentially increased venous pressures, and the fact that a peripheral IV in the foot is much farther from the central circulation than an IV in the upper extremity or external jugular vein."

The morning of my mother's death a nurse named Carrie Larimore turned off my mother's oxygen monitor due to "decisions to not further treat the hypoxia." Who would authorize such inhumane "decision" to stop treating a patient who's body is being deprived of an adequate oxygen supply (hypoxia) and why?? Whoever did that caused my mother to suffocate to death!

On page 14 Sabeen Zeb, MD wrote "patient declared dead. Rick & his lawyer present, all questions answered" - that is an absolute lie! No doctor ever talked to me about what happened! The integrity of that whole medical chart is called into question when medical personnel lie! Compare to page 376 when it is written that I "arrived around 7:50" - my mother passed away at 7:36 AM and I was not present.

The guardian, Jerry Patterson, repeatedly tried to get the caregiver company as many billable hours as possible, to try to get mother on more and more unnecessary medications, and especially separate me from my mother. He ignored her health and needs, contributed materially to looting her sizable estate, and threatened that if i reported the physical abuse of mother, by caregiver Deb (we were not allowed to know the caregivers last names) my mother would be put in a nursing home.

Mother's trust company and lawyers suggested a caregiver company. There was trouble with the caregivers from the start. They did everything possible to increase billable hours, they were rude and confrontational, and they did everything possible to separate me from my mother.

Mother's attorney Vic Davis repeatedly ignored my mothers interests, physical, medical, emotional and financial, despite my repeatedly contacting him.  He worked for almost a year to get me evicted from the house I where I had been living with my mother. He said the reason for this was that I was spending time sweet talking her to eat.  An earlier doctor, Slagek, had said she should have small frequent meals.  Later there were numerous references in the hospital reports of her death to her being severely malnourished. This was after spending a more than a million dollars on caregivers.

Vern Gannon: After the auction many family personal items went missing and I was at the auction and also some family heirlooms were carelessly sold to outsiders.

Everything about this has been very, very difficult. The rude and insulting behavior of the nurses right after she died, the incorrect records and many other things.

List of Defendants:

Via Christi Ascension Hospital
1823 College Ave, Manhattan, KS 66502

Sabeen Zeb, MD (Hospitalist at the time my mother was there)

Dr Avinash Singh with Inspire ENT & Pulmonology
4201 Anderson Ave STE C, Manhattan, KS 66503

Nurses listed on the medical reports for mother's last stay in the hosptital

Any Doctors that participated in a conference about my mother on the last day of her life

Dr. Melissa Rosso Stonecreek Family Physcians
4101 Anderson Ave, Manhattan, KS 66503

Stonecreek Family Physicians
4101 Anderson Ave, Manhattan, KS 66503

Dr. Diana Brightbill
1133 College Ave # E110, Manhattan, KS 66502

Medical Associates of Manhattan
1133 College Ave Ste E220, Manhattan KS, 66502

Cotton O'niel Clinic
1133 College Ave. Suite E-110, Manhattan, KS 66502

Hospice Physician, Accord Hospice Company
3250 Kimball Ave, Manhattan, KS 66503

Accord Hospice Company
3250 Kimball Ave, Manhattan, KS 66503

Jerry Patterson
Wakefield Real Estate Agency
616 Birch St, Wakefield, KS 67487

Merchants and Farmers Bank
711 Elm St, Wakefield, KS 67487

Jeff Birnbaum, former Manager of At Home Assisted Care
400 Poyntz Avenue, Manhattan, Kansas 66502

Woody Shumaker, manager, At Home Assisted Care
400 Poyntz Avenue, Manhattan, Kansas 66502

At Home Assisted Care

400 Poyntz Avenue, Manhattan, Kansas 66502

Ryan Hayden, manager, Angels at Home
1320 SW Topeka Blvd, Topeka, KS 66612

Angels at Home, a home health care company
1320 SW Topeka Blvd, Topeka, KS 66612

Meadowlark Hills Retirement Community
2121 Meadowlark Rd, Manhattan, KS 66502

Shawn Parcells, National Autopsy Services
827 SW Topeka Blvd # C, Topeka, KS 66612

Vic Davis, Weary Davis Law Firm
555 Poyntz Ave # 240, Manhattan, KS 66502

Weary Davis Law Firm
555 Poyntz Ave # 240, Manhattan, KS 66502

Mark Knackendoffell, Trust Company of Manhattan
800 Poyntz Ave, Manhattan, KS 66502

Lucy Williams Trust Company of Manhattan
800 Poyntz Ave, Manhattan, KS 66502

Trust Company of Manhattan
800 Poyntz Ave, Manhattan, KS 66502

Respirdal manufacturer, Johnson and Johnson subsidiary Jansen
One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933

Pharmaceutical Manufacturers of various pharmacueticals that were used in this case, to be determined later, particularly the morphine and ativan mixture mistakenly used

Charles M. Opheim
11248 Jamestown Rd Dallas, TX 75230

Vern Gannon
Gannon Real Estate & Auctions
3012 Montana Ct, Manhattan, KS 66502

Other Doctors, Nurses and other parties to be determined on further research